JULIA CUNNINGHAM, ADMRX., ETC., *v.* W. MILTON MOORE.

(*Nashville,* December Term, 1929.)

Opinion filed June 28, 1930.

Sam C. Tigert, for complainant, appellant.

B. E. Holman, for defendant, appellee.

Mr. Justice McKinney delivered the opinion of the Court.

Julia Cunningham, the widow of G. C. Cunningham, filed this bill to establish her claim to homestead and

dower in a 133 acre tract of land in Lincoln County, and to recover its possession from the defendant.

The chancellor dismissed the bill. Upon appeal the Court of Appeals reversed the chancellor and decreed complainant the relief sought. Both parties filed petitions for writs of *certiorari,* which have heretofore been granted and argument had.

Complainant was married to G. C. Cunningham on December 12, 1922. At that time the latter owned the tract of land in controversy, but it was heavily encumbered. Subsequently, the mortgagees pressed him for payment, and in this situation Cunningham negotiated certain loans to take care of said indebtedness, including one from Mrs. Hayman, to secure which he attempted to mortgage this tract of land. The date of this mortgage is December 1, 1923. G. C. Cunningham died on October 7, 1924. Thereafter the Hayman mortgage was foreclosed, the property purchased by the defendant, and possession obtained by an action of forcible entry and detainer. This suit followed.

Both courts concurred in finding that the mortgage was signed by complainant and her husband; that she was privily examined and the mortgage delivered, but that the notary public by oversight failed to incorporate the name of complainant in the certificate of acknowledgment, and also failed to affix his seal to the certificate. The notary public, upon learning of his omission, to-wit, on October 9, 1925, undertook to correct same as provided by section 3759 of Shannon's Code.

The question which we are urged to decide is can the homestead, title to which is vested in the husband, be conveyed without the privy examination of the wife? Counsel for defendant insist that the privy examination

by the wife has been dispensed with by section 2, chapter 48, Acts of 1919, which is as follows:

"The acknowledgment of a married woman when required by law may be taken in the same form as if she were *sole* and without any examination separate and apart from her husband."

■ The provision of the constitution with respect to the conveyance of the homestead is as follows: "Nor shall said property be alienated without the joint consent of husband and wife, when that relation exists." Article 11, section 11.

It will be noted that the constitution is silent as to the method by which the consent of the husband and wife is to be ascertained, the evident intention being to leave that to the legislature. ·

Such was the construction given to that provision of the constitution by the legislature, for, immediately upon the adoption of the constitution, it enacted chapter 80, Acts of 1870, establishing a homestead, and, with respect to its alienation, said: "That said real estate shall not be alienated without the joint consent of the husband and wife, where that relation exists, to be evidenced by conveyance duly executed as required by law for married women."

The court, in *John and Joseph Kennedy, et al.* v. *J. B. Stacey, et al.*, 60 Tenn., 224, said:

"But the deed in question was not made until July, 1871; in the meantime the Constitution of 1870, and Act under it, had made additional provisions; that is, that the property shall not be alienated without the joint consent of husband and wife; that is, by deed duly executed."

The existing law, with respect to conveyances by husband and wife, provided for the privy examination of the wife. Section 2076, Code of 1858.

It was the wife's privy examination, and not her signature, which gave the conveyance validity. *Roach* v. *Francisco,* 138 Tenn., 367.

In the case just cited it was urged that, by implication, chapter 26, Acts of 1913, emancipating married women, dispensed with the privy examination of the wife in the alienation of the homestead. In responding to this contention, the court said:

"A construction of the Married Woman's Act which would dispense with privy examination would make the act violate this section of the constitution, as often construed by this court, and that, of course, we cannot give unless we are compelled to do so by the very words employed by the legislature."

█ This statement is contradictory and was evidently an inadvertence, because the legislature would have no power to dispense with privy examination if it was required by the constitution. Since the constitution contains no provision for the privy examination of the wife, and the statute does, it is manifest that the court inadvertently used the word "constitution" when the word "statute" was intended. Such was the construction placed upon this decision by the legislature, for, at the next session, it enacted chapter 48, Acts of 1919, dispensing entirely with the privy examination. The language of this latter act is broad, comprehensive, and explicit. The object attained is in keeping with the modern idea of placing married women upon the same plane with men relative to acquiring, dealing with, and disposing of property.

What was stated by this court in *Jefferson County Bank* v. *Hale,* 152 Tenn., 658, is applicable here, to-wit:

"The effect of chapter 126, Acts of 1919, was to remove all the disabilities of coverture and clothe the wife

with all the power of a single woman. *Snyder* v. *Jett,* 197 S. W., 488, 138 Tenn., 211.

"By force of this act married women can alien their lands as if unmarried.

"It is generally held in jurisdictions where similar statutes to ours have been passed that such statutes dispense with the privy examination under prior acts. See 1 A. L. R., 1098, note 5.

"It is no longer necessary for the husband to join the wife in her conveyance so as to supply the benefit of his advice and guidance to prevent imposition upon her. Nor is it longer necessary to require privy examination to protect the wife from oppression of the husband. The Emancipation Act so declares. The common-law disabilities of married women and the attendant safe-guards once supposed necessary to the well-being of society are supplanted by chapter 126 of the Acts of 1919."

While in the case just referred to the court made reference to the decision in *Roach* v. *Francisco, supra,* the question of the necessity for the privy examination of the wife where she joins her husband in conveying the homestead was not involved and the court did not intend to pass upon that question.

The privy examination having been dispensed with, this deed, which was signed by the parties, and delivered, passed title to the mortgagee.

In *Woods* v. *Bonner,* 89 Tenn., 417, it was said:

"But those objections go only to the matter of proper preparation of the instrument for registration, and do not touch the question of its sufficiency to pass title from vendor to vendee as between themselves. It is well settled that a deed is effective, as between the parties and their heirs, without registration, or proof for registration, either by subscribing witnesses or by acknowledgment of

the maker. Divestiture and revestiture of title, as between them, may be perfected by a proper deed merely signed and delivered." (Citing authorities.)

The Court of Appeals entertained the same view, with respect to this mortgage, which we have expressed herein, but construed *Roach* v. *Francisco* and *Jefferson County Bank* v. *Hale, supra,* as holding to the contrary.

Having held the mortgage valid as between the parties, it is unnecessary to consider the question of the effect of the attempted correction of the certificate of acknowledgment.

Complainant also sought a decree for the value of a sow and pigs, alleged to have been converted by the defendant. Upon this question the Court of Appeals found in favor of the complainant, and the evidence to which we have been referred is insufficient to justify us in interfering with their conclusion.

Having held that complainant is not entitled to recover any interest in the land, it necessarily follows that she is not entitled to recover rent therefor since it came into the possession of defendant.

Counsel for complainant have assigned error upon the action of the Court of Appeals in sustaining the validity of a chattel mortgage executed by complainant and her husband in December, 1923, upon crops to be grown on the tract of land here involved in the year 1924.

This court many years ago held such a mortgage valid. *Watkins* v. *Wyatt,* 68 Tenn., 250, and *Judge* v. *Jones,* 99 Tenn., 20. Such is the rule in most jurisdictions. 11 Corpus Juris, 443. Since the decisions just referred to the common practice has been to mortgage future crops to obtain supplies of food and clothing necessary to enable tenants to raise crops.

■ We are further of the opinion that our Uniform Sales Act, chapter 118, Acts of 1919, has no application to mortgages like the one under consideration.

Mr. Williston, in section 135 of his work on Sales (2 Ed.), says:

"In the case of sales the objections which exist to the doctrine of potential possession as applied to mortgages are enormously increased. No record is necessary for the validity of a sale, and if the owner of land may sell his future crops, the result may well be hardship upon innocent third persons. The rules of law in regard to delivery and forbidding retention of possession by the seller must be relied on to afford protection to such persons. It seems, therefore, that the conclusion of the draughtsman of the English Sales of Goods Act is sound, that 'There is no rational distinction between one class of future goods and another.' Consequently, the American Sales Act, following the English Statute, makes no exception to the general rule as to future goods in favor of goods of which the seller has potential possession. The buyer of such goods cannot acquire under the provisions of this act more than an equitable property right. He will not acquire even this, moreover, except in jurisdictions which give such a right in regard to future goods of other kinds. As mortgages, however, are not covered by the Sales Act except in a few instances where it is so specially stated, the power to make an effective mortgage of crops or other future goods is not affected by the act."

With respect to any questions not specifically considered herein we concur with the conclusion of the Court of Appeals. A decree may be drawn in accordance with this opinion.

The complainant prosecuted this suit by subscribing to the oath provided for poor persons, and owns no property subject to execution. In this situation the defend-

ant will be taxed with the costs accrued at his instance, with judgment over against complainant for all of the costs.

The cause will be remanded unless the parties can agree as to the value of the sow and pigs.