FREeman, J.,
delivered the opinion of the court:
The original bill in this case is filed to have a deed of trust made by Erwin to defendant, Hawley, to secure payment of a number of debts therein declared fraudulent and void — the largest debt being one due to- Hawley himself, of about $1,119. This deed was dated 22d of August, 1865, and conveyed the land now in controversy, with the following personal property, to wit: “One four-horse wagon, one two-horse wagon, twenty head of sheep, four head of cattle, one windmill, one horse, and two tons of hay.”
This deed gave the power of sale to the trustee, but postponed it for two years from its date. Hawley was a brother-in-law of Erwin. Ho steps have ever been taken by the trustee to execute this trust, but it seems all the debts have been paid secured in it, eoccept a portion of the debt due Hawley, which was part of the purchase money for the land, it having been purchased from Hawley by Erwin, and conveyed to him, but no hen retained for the purchase money. This bill was filed January, 1873.
The deed on its face, in one aspect of it, seems fair, and rebuts, to some extent (if a statement of Erwin in his answer be accetped as true), the idea of a fraudulent intent. It provides not only for the payment of the debts specified, hut adds “some other small debts due to other persons, the amounts of which are not remembered.” The statement of Erwin is, that at its date, he had no knowledge of his liability on the bank debt, it being as indorser or security for another party, and that he intended to secure by the deed all the debts then owing by him, those remembered as well as those not. The securing of all the known creditors of a *444 party by a conveyance of all bis property, would go far to rebut a fraudulent intent, in any case, and certainly would, in most cases, free the deed from all suspicion. But the fact in this case is, that this banlc debt did exist, and he has been sued on it at law, where a judgment had been liad against him. We now look at the evidences of fraud as against this creditor, whose debt is not included in the deed. In the first place, the conveyance is made to a near i dative, a slight circumstance of itself, -but having some weight in connection with the other facts in the record. In the second place, the deed has two years to run before it is to be executed — the debts being all due. This is only, however, a circumstance to be looked at, as a matter of evidence in connection with the other facts of the case, in arriving at the intent with which the deed was made. Third, a part of the property was consumable in the use, to wit; the two tons of hay, though it is not contracted in the deed that it should remain in possession, and use of the grantor. In a conveyance to a trustee^, the simple fact that property consumable in its use is embraced in, the deed, would not, of itself, be conclusive evidence of fraud, unless it was stipulated in the deed that it should remain in the possession and use of the grantor — as in the case of Wade et al. v. Green, 3 Hum., 549, and Sommerville v. Horton, 4 Yer., 550. In this last, 'Catron, judge, states the -principle correctly, that if the deed was intended to secure the use of the property to the grantor, such property being consumable in its use, then, as to these articles, it was fraudulent and void on the principle a creditor cannot secure his honest debts on the property of his debtor, with the intent to let the debtor use and exhaust his means of payment, reserving the object secretly intended to be applied to the discharge of the mortgage debt. Even in a case of absolute sale in 8 Yer., 419, the allowing of property of this character to remain in possession of grantor, while held as strong evidence of fraud, yet to be repelled by proof of fairness.
*445 There is occasionally a remark in some of onr cases, tending to support the idea that if consumable articles are allowed even to remain in possession of grantor, the deed would bo held absolutely fraudulent, but where the facts are looked to, and the question actually adjudged, it will be seen they do not contravene the above principles.
Applying them, in connection with other settled rules, to the case in hand, we are compelled to hold this deed, as to Hawley, fraudulent, he being the only party now claiming under it. The matters we have referred to, are all, more or less, evidences of a fraudulent intent. In adition to them, we have the. fact that, while the deed did not stipulate the property should remain in the possession and use of the grantor, yet, in fact, it was permitted so to remain, and that in accord with the purpose of Hawley and Erwin. It is also shown that it was permitted to be used as before the deed. It is true some of it was applied by the grantor to payment of the debts secured, yet the balance vas used and consumed as he pleased, with no restraint on the part of the trustee, Hawley. In fact, he seems to have asserted no control over it whatever, but left Erwin to do as he pleased with it. He is thus permitted to use it from 1865 to 1873, a period of near eight year, enjoying its free use as owner — at the same time occupying the land as his own.
Under these circumstances, we are compelled to say that the parties are to be held to intend the legitimate and permitted result of their' acts, which is, that while the property is covered and apparently shielded from creditors, yet, at the same time, it is and 'was intended to be enjoyed, used, and possessed by the grantor as his own, as if no conveyance had been made. Under all the cases, this can-r ot be allowed, and the deed must be held fraudulent and void as to the creditor existent when made. We need but say that no lien exists for the payment of this debt, as purchase money for the land, the party retaining none on the face of his deed, and taking the security of a deed of trust, *446 must stand on that, having thereby abandoned the implied lien given by law bo the vendor.
The decree of the chancellor is affirmed. The costs in both courts, however, will be paid out of the fund arising from the sale of the land.
Contrary to the general rule of this court, the case must be remanded for execution of the decree, as it appears a partition of the land must be made, or a report of the necessity of the sale for this purpose, and this can be more conveniently done in the court below.