IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 26, 2012 Session

# EQUITY MORTGAGE FUNDING, INC. OF TENNESSEE ET AL. v. JOE BOB HAYNES

Appeal from the Chancery Court for Wilson County
No. 10C125      Charles K. Smith, Chancellor

No. M2011-01717-COA-R3-CV - Filed March 20, 2012

The issue in this case is which of two deeds of trust has priority.  Deed of trust A was executed before deed of trust B was executed; A was also registered before B was registered, but after B was executed.  We affirm the chancellor's decision that A has priority over B and that equitable estoppel does not apply to change this result.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S.,  and RICHARD H. DINKINS, J., joined.

Frank Reeves, Nashville, Tennessee, for the appellants, Equity Mortgage Funding, Inc. of Tennessee and Joseph M. Swanson.

Susan Carol Parkes, Lebanon, Tennessee, for the appellee, Joe Bob Haynes.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Joe Haynes owned commercial property at 1007 North Cumberland Street in Lebanon, Tennessee.  On August 7, 2008, Haynes sold the property to Charles Jason Jones and Angela Felts for $500,000.  Haynes financed $450,000 of the purchase price and received a promissory note from Jones and Felts.  In conjunction with this transaction, Jones and Felts executed, as mortgagors, a deed of trust transferring legal title to the property to a trustee to secure payment of the promissory note.

Haynes entrusted the recording of the warranty deed and deed of trust to the closing agent.[1] The warranty deed for the August 7, 2008 sale was not recorded with the Wilson County Register's Office until October 6, 2008.

In November 2008, Jones contacted Equity Mortgage Funding, Inc. ("EMF") for a $250,000 loan on the same piece of property and represented to EMF that there were no liens on the property. EMF reviewed the settlement statement from the August 2008 purchase, which stated that none of the funds used to purchase the property were borrowed funds, and had a title search done. EMF's loan to Jones and Felts closed on November 26, 2008. The same day, Jones and Felts executed a deed of trust naming EMF as the beneficiary. The next business day, December 1, 2008, the title company sent the EMF deed of trust by Federal Express to the register's office. The register's office received and recorded the EMF deed of trust on December 2, 2008.

The Haynes deed of trust had been recorded in the register's office on December 1, 2008.

EMF filed this action against Haynes in March 2010 seeking a declaration that the Haynes deed of trust was subordinate in priority to the EMF deed of trust. In September 2010, EMF received court authorization to add Joseph M. Swanson, trustee of charitable remainder trust,[2] as an additional plaintiff and to file an amended and restated complaint. In June 2011, the plaintiffs moved for summary judgment with affidavits from EMF's president, the attorney who performed the title search for EMF, and Joseph Swanson, the trustee.

Haynes responded in opposition to the motion for summary judgment and submitted his own affidavit, which includes the following statements:

> At the request of the buyers [Jones and Felts], closing was performed by a title company of his choosing, who prepared all documents and were responsible for filing the same, including the deed of trust.

> Some time thereafter, during a conversation with Bev Spickard, Register of Deeds, Affiant discovered that the deed of trust had never been recorded.

> I began attempting to contact the purchaser, Charles Jones, concerning the deed of trust. I finally sat out in the parking lot of his business until 10:00 at

---

[1] It is undisputed that the closing agent was selected by Jones and/or Felts.

[2] EMF had assigned its mortgage and mortgage note to the charitable remainder trustee.

night and caught him in the parking lot. At that time he promised to record it the next day. He failed to do so. I do not recall the exact day that this occurred.

Jones did not file the deed of trust as promised.

The following day I retained Attorney Mark Lee, Lee & Lee, Attorneys, to take action on the recording of this document.

Thereafter, Mr. Lee tracked down Jones and the deed of trust was recorded.

During this time, I had no knowledge of any subsequent financial transactions by Jones.

Haynes also submitted the affidavit of Attorney Mark Lee, who stated that Haynes had come to his office in early December 2008 and that, after doing a title search, Lee informed Haynes that his deed of trust had been recorded and that an additional deed of trust had been recorded the next day.

On July 1, 2011, the trial court entered an order denying the plaintiffs' motion for summary judgment and, on its own initiative, granting summary judgment to Haynes. The court found no disputed material facts, and noted that the plaintiffs did not dispute the facts set forth in the affidavits of Haynes and Lee. With respect to the plaintiffs' claim of equitable estoppel, the court stated:

[T]here was no intention or even expectation on Mr. Haynes' part that any third party, such as Equity Funding, would act or rely on any conduct of his, including his execution of the Settlement Statement for the August 7 transaction, or on the nonregistration of his Deed of Trust prior to December 1, 2008. In pursuing registration of that Deed of Trust in November and December 2008, Mr. Haynes acted as any reasonable person would.

Since the plaintiffs failed to establish the elements of equitable estoppel, the court reasoned, the Haynes deed of trust was entitled to priority over the EMF deed of trust "by reason of its earlier registration."

EMF and the trustee (collectively, "EMF") appeal on two grounds. EMF argues that the Haynes deed of trust, though registered before the EMF deed of trust, is null and void as to the EMF deed of trust because EMF was a subsequent mortgagee for value and without

notice. In the alternative, the plaintiffs argue that Haynes should be estopped from asserting the priority of his deed of trust.

STANDARD OF REVIEW

Under Tenn. R. Civ. P. 56.04, a party is entitled to summary judgment only if there "is no genuine issue as to any material fact" and that party "is entitled to a judgment as a matter of law." In reviewing a summary judgment, this court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown,* 955 S.W.2d 49, 50 (Tenn.1997). In this case, there are no genuine issues of material fact; therefore, we must make a de novo determination as to whether the defendant, Haynes, was entitled to judgment as a matter of law.

ANALYSIS

1.

This case requires us to determine how Tennessee's recording statutes apply to the facts at hand. Tennessee's current recording system, codified at Tenn. Code Ann. §§ 66-26-101—66-26-116, is founded upon chapter 90 of the Public Acts of 1831. While there have been amendments over the years, "the basic provisions governing registration of title documents today in Tennessee remain those outlined in the act of December 20, 1831." Toxey H. Sewell, *The Tennessee Recording System*, 50 TENN. L. REV. 1, 12 (1982).

In arguing that its deed of trust, executed after the Haynes deed of trust and registered after the Haynes deed of trust, should take precedence over the Haynes deed of trust, EMF relies upon Tenn. Code Ann. § 66-26-103, which provides:

> Any instruments not so registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.

The term "purchaser" as used in this provision includes a mortgagee to the extent of the mortgagee's secured indebtedness. *Robinson v. Owens*, 52 S.W. 870, 871 (Tenn. 1899); *Sav., Bldg. & Loan Ass'n v. McLain*, 76 S.W.2d 650, 654 (Tenn. Ct. App. 1934). The problem with EMF's argument is that prior cases interpreting Tennessee's recording statutes have held that one does not become a bona fide purchaser until he or she registers the instrument. *See Copeland v. Bennet,* 18 Tenn. 355, 358 (1837); *Whiteside v. Watkins*, 58 S.W. 1107, 1115 (Tenn. Ct. App. 1900); *see also Hitt v. Caney Fork Gulf Coal Co. v.*

*Gibbons*, 139 S.W. 693, 695 (Tenn. 1911) ("Whoever should first obtain legal registration, would, under our registration laws, obtain precedence.").

Both *Copeland* and *Whiteside* involved fact patterns similar to that presented here: instrument A is executed, then instrument B is executed; instrument A is recorded after the execution of instrument B, and instrument B is recorded later. In both cases, the court found that instrument A, as the first instrument registered, should have priority under the recording statutes. *See Copeland*, 18 Tenn. at 358; *Whiteside*, 58 S.W. at 1115-18. Both cases cited the predecessor to what is now Tenn. Code Ann. § 66-26-102, which provides:

> All of the instruments registered pursuant to § 66-24-101 shall be notice to all the world from the time they are noted for registration, as prescribed in § 8-13-108; and shall take effect from such time.

The *Copeland* court concluded that an instrument "only took effect from the date of its registration" and that the first instrument registered took priority. *Copeland*, 18 Tenn. at 358. While the court in *Whiteside* expressed some disagreement with the rule announced in *Copeland* , the court considered itself bound by this precedent. *Whiteside*, 58 S.W. at 1115-16. As there are no cases reaching a contrary result, "available precedent suggests that the subsequent purchaser under the given circumstances must be the first to place his instrument on record in order to prevail." Sewell, *supra*, at 35.[3]

EMF emphasizes that "the primary object of our registration laws is to protect creditors and innocent purchasers against secret and unrecorded liens." *Dixon v. Morgan*, 285 S.W. 558, 563 (Tenn. 1926). Acknowledging this purpose, this court must follow the language of the recording statutes and the precedents interpreting them.[4] We must, therefore, affirm the trial court's decision in favor of Haynes, the first to register his deed of trust.

---

[3]While EMF also cites Tenn. Code Ann. § 66-26-105, EMF acknowledges that this provision is not directly applicable because it addresses the situation when a junior (later executed) deed is registered first. *See Copeland*, 18 Tenn. at 358, *Whiteside*, 58 S.W. at 1115. The statute does, however, demonstrate the importance of registering first.

[4]It should also be pointed out that neither of the mortgagees before the court in this matter, Haynes or EMF, is accused of defrauding the other; the presumptive bad actors, the makers of the two deeds of trust, are not involved in this case.

2.

EMF also argues that Haynes should be equitably estopped from asserting the priority of his lien. We do not agree.

To successfully invoke the doctrine of equitable estoppel, a plaintiff must establish the following elements with respect to the party against whom the plaintiff asserts the doctrine:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

*Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004). To be entitled to summary judgment on this issue, Haynes (who was not the party with the burden of proof at trial on the issue of equitable estoppel) had to affirmatively negate an essential element of the equitable estoppel claim or show that EMF could not prove an essential element at trial. *See Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83-84 (Tenn. 2008).

The trial court stated in its opinion that "the material facts are undisputed at least for summary judgment purposes" and that EMF "did not dispute the facts set forth in the Affidavits of Joe Bob Haynes and J. Mark Lee, Esquire, both submitted by Mr. Haynes in opposition to Plaintiff's Motion [for summary judgment]." In his affidavit, quoted more extensively above, Haynes stated: "During this time [before the Haynes deed of trust was recorded], I had no knowledge of any subsequent financial transactions by Jones." Attorney Lee testified by affidavit that Haynes "indicated that the second [EMF] deed of trust came as a surprise to him" and that Haynes "expressed that he was unaware that his Deed of Trust had gone unrecorded until December of 2008." Taking these facts as undisputed, we must conclude that Haynes negated two of the elements of equitable estoppel: conduct amounting to a false representation or at least calculated to convey that the facts "are otherwise than, and inconsistent with, those which the party subsequently attempts to assert"; and intention or expectation that the other party will act on this conduct. *Osborne,* 130 S.W.3d at 774.

Under the undisputed facts, we conclude that the trial court properly granted summary judgment in favor of Haynes.

CONCLUSION

The decision of the trial court is affirmed. Costs of appeal are assessed against the appellants, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE